710 A.2d 1104

**Daniel E. SHOPE and Shonna L. Shope, His Wife, Appellants**

**v.**

**Perry A. EAGLE, M.D., and York Hospital, Appellees.**

Supreme Court of Pennsylvania.

Submitted Jan. 27, 1998.

Decided April 2, 1998.

─────

Leslie M. Fields, Lemoyne, for Daniel and Shonna Shope.

Peter J. Curry, Harrisburg, for Perry A. Eagle, M.D.

Christopher A. Stump, Reading, for York Hospital.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

ZAPPALA, Justice.

This appeal raises the issue of whether prejudice to the defendant as a result of delay in prosecution is required before a case may be dismissed pursuant to local rules implementing Rule of Judicial Administration 1901.[1] We answer this inquiry in the affirmative and hold that the standard applicable to terminations for inactivity pursuant to a defendant's motion for non pros applies equally to dismissals pursuant to Rule 1901. As Appellees have established prejudice, however, we affirm the decision of the Superior Court.

On July 26, 1990, Daniel E. Shope was involved in an automobile accident and fractured his right leg. He was subsequently treated by Dr. Perry A. Eagle, M.D., at York

---

1. The companion cases of *Jacobs v. Halloran*, 551 Pa. 350, 710 A.2d 1098 (1998), and *Marino v. Hackman*, 551 Pa. 369, 710 A.2d 1108 (1998), also decided today, involve related issues. In *Jacobs*, we abandon the presumption of prejudice first enunciated in *Penn Piping, Inc., v. Insurance Company of North America*, 529 Pa. 350, 603 A.2d 1006 (1992), and hold that the defendant must establish actual prejudice by the delay in prosecution. In *Marino*, we hold that non-docket activity may be examined in determining whether a compelling reason exists for the delay.

Hospital. On October 23, 1991, Daniel and his wife (Appellants), filed a medical malpractice and corporate negligence action against Dr. Eagle and York Hospital (Appellees), alleging that Dr. Eagle negligently treated Daniel's leg.

The docket reflects that a subpoena was issued on August 31, 1992. The next entry was an October 25, 1995 court order directing the parties to appear for a hearing on whether the case should be terminated for inactivity. During the period of inactivity, Dr. Kruper, an orthopedic surgeon who had examined Daniel after Dr. Eagle's allegedly negligent treatment, died.

At the termination hearing, Appellants argued that the delay in prosecution was partly attributable to Appellees because they failed to timely produce an x-ray which was critical to the case. The trial court found that the missing x-ray did not affect the outcome of the case, that the delay was not chargeable to Appellees and that the death of Dr. Kruper prejudiced Appellees. Accordingly, it terminated the action for lack of activity pursuant to Local Rule 255(b).[2]

The Superior Court, 695 A.2d 446, affirmed, holding that although the trial court applied a rescinded version of the local rule, it did not abuse its discretion in terminating the case.[3] It found that because the trial court ordered the termination pursuant to a local rule, rather than entering a judgment of

2. Rule 255 provides:
    (a) All civil cases filed in this court which shall not have been reduced to judgment or final order, and in which no action has been taken for a continuous period of two (2) years or more preceding the end of each calendar year, shall be automatically terminated as herein provided, in accordance with Pa.R.J.A.1901.
    (b) On or before the fourth Friday of June of each calendar year, the Prothonotary shall furnish to the District Court Administrator a list of all cases:
    (1) Which have become inactive cases as herein defined as of the close of the preceding calendar year; and
    (2) Which previously became inactive cases as herein defined but have not theretofore been terminated as herein provided.

3. As noted in footnote two, former Local Rule 255 directed that all civil cases be terminated if no action has been taken for two years or more. In contrast, Local Rule 6035(a), which replaced Rule 255 on April 15, 1996, requires both inaction *and* docket inactivity for at least two years.

non pros for docket inactivity pursuant to *Penn Piping v. Insurance Company of North America,* 529 Pa. 350, 603 A.2d 1006 (1992), no prejudice to Appellees need be demonstrated. It further held that Rule 1901 and the local rules promulgated thereunder are designed to eliminate cases that have become stale for any reason, based upon the conduct of any party to the action. Slip op. at 8. Thus, it concluded that it was irrelevant which party was responsible for the delay.

Appellants first contend that prejudice must be established to warrant termination of a civil action under Rule 1901. They also argue that a case may not be terminated pursuant to Rule 1901 if the delay is attributable to the defendant.

The disputed element of prejudice does not arise from the language of Rule 1901,[4] but rather stems from case law setting forth the requirements for entering a judgment of non pros upon motion of the defendant for lack of prosecution. Although terminations pursuant to Rule 1901 and motions for non pros both result in the dismissal of a case for inactivity,[5] each action has a distinct procedure.

Rule 1901 is essentially an administrative tool by which the court, through the prothonotary, may rid the court dockets of stale matters that have not been discontinued by the parties. The local rules implemented thereunder are "intended to foster elimination of stale cases from the judicial system where the parties have failed to proceed and which are carried

**4.** Rule of Judicial Administration 1901 provides in pertinent part:

RULE 1901. PROMPT DISPOSITION OF MATTERS: TERMI-NATION OF INACTIVE CASES

(a) General Policy. It is the policy of the unified judicial system to bring each pending matter to a final conclusion as promptly as possible consistently with the character of the matter and the re-sources of the system. Where a matter has been inactive for an unreasonable period of time, the tribunal, on its own motion, shall enter an appropriate order terminating the matter.

(b) Primary Responsibility for Implementation of Policy.

(1) Each court of common pleas is primarily responsible for the implementation of the policy expressed in subdivision (a) of this rule and is directed to make local rules of court for such purposes....

**5.** It should be noted that a "judgment of non pros" can be entered in cases involving either a defendant's motion or upon the prothonotary's initiative pursuant to local rules implementing Rule 1901.

as open matters because of the failure on the part of any party to seek dismissal or otherwise to bring the matter to a conclusion." Pa.R.J.A.1901 Note.

■ A motion for a judgment of non pros is the vehicle by which a litigant asserts his or her common law right to a reasonably prompt conclusion to a case. In the companion case of *Jacobs v. Halloran*, also decided today, we noted that the grant of a judgment of non pros is based upon the equitable principle of laches, which requires that the adversary suffer harm before a case is dismissed for inactivity.[6] We further held that, pursuant to the rules of equity, the party seeking dismissal for inactivity must do so with clean hands. In this case, we must determine whether the same is true for a dismissal pursuant to local rules implementing Rule 1901. This issue has been a source of confusion in the lower courts.

The Superior Court and the Commonwealth Court have stated, without analysis, that prejudice to the adverse party is part of the test employed to dismiss cases due to inactivity pursuant to local rules enacted under Rule 1901. See *Metz Contracting, Inc. v. Riverwood Builders, Inc.*, 360 Pa.Super. 445, 520 A.2d 891 (1987); *Blair v. Zoning Hearing Board of the Township of Pike*, 676 A.2d 760 (Pa.Cmwlth.), alloc. granted, 548 Pa. 683, 699 A.2d 736 (1997).

The Superior Court in the instant case, however, relied upon *Pilon v. Bally Engineering Structures*, 435 Pa.Super. 227, 645 A.2d 282, alloc. denied, 539 Pa. 680, 652 A.2d 1325 (1994), in which a different approach was taken. In *Pilon*, the court found that although prejudice need be demonstrated prior to the entry of a judgment of non pros, an order

---

**6.** Accordingly, as noted in footnote one, we rejected the presumption of prejudice adopted in *Penn Piping* and required that actual prejudice be shown before a case is dismissed for lack of prosecution. We find that the weakness of the presumption of prejudice is exemplified in a Rule 1901 dismissal. It strains logic to conclude that prejudice is required for a Rule 1901 dismissal, and at the same time presume prejudice after two years of inactivity. In order for a particular case to come to the attention of the prothonotary for Rule 1901 purposes, the case must have already been inactive, at least on the docket, for a period of two years.

terminating an action for inactivity pursuant to a local rule "may be entered by the court sua sponte after an unreasonable period of inactivity even though there may be no prejudice to the defendant." *Id.* at 230 n. 1, 645 A.2d at 283 n. 1. It distinguished the terminations by observing that an order terminating an action pursuant to a local rule is a final appealable order whereas an order entering a judgment of non pros can only be challenged by filing a petition to open pursuant to Pa.R.C.P. 3051.[7]

Our Court was faced with a Rule 1901 dismissal in *Streidl v. Community General Hospital,* 529 Pa. 360, 603 A.2d 1011 (1992).[8] In the Opinion in Support of Affirmance, Mr. Justice (now Chief Justice) Flaherty rejected the argument that prejudice is not required in a Rule 1901 dismissal and stated that "[i]t does not matter whether the prothonotary notifies the parties of its intent to terminate the case, or whether the nondelaying party petitions for dismissal; *the same standards apply." Id.* at 362 n. 2, 603 A.2d at 1012 n. 2 (emphasis added).

In the Opinion in Support of Reversal, this author found that because the defendant made no claim of prejudice, the case should not have been terminated by a judgment of non pros. Thus, although the members of the Court disagreed as to whether the case should have been dismissed, we agreed that prejudice to the defendant was a component of a Rule 1901 dismissal.[9] The issue which divided the Court in *Streidl*

---

**7.** In Judge Olszewski's dissenting opinion, he concluded that because the two types of terminations serve nearly identical purposes, Pa.R.C.P. 3051 applies in all cases in which relief from a judgment of non pros is sought, whether the judgment has been entered by praecipe as of right or by the court following a hearing.

We express no opinion on the issue of whether a petition to open pursuant to Pa.R.C.P. 3051 need be filed to appeal a Rule 1901 termination as that question is not before our Court.

**8.** *Streidl* was decided the same day as *Penn Piping. Penn Piping,* however, did not involve the termination of a case pursuant to Rule 1901 as the local rule implementing Rule 1901 was rescinded at the time the trial court dismissed the case.

**9.** Counsel for Appellee Dr. Eagle acknowledges that a majority of the Court in *Streidl* agreed that prejudice is required for a Rule 1901 dismissal.

was the application of the *Penn Piping presumption* of prejudice.[10]

The Note to Rule 1901 supports the conclusion that prejudice is required before a case is terminated for inactivity. The Note states that the rule has no effect on the substantive law. The substantive law prior to the promulgation of Rule 1901 required that the adversary be prejudiced by the delay before a case is dismissed for inactivity. *James Bros. Lumber Co. v. Union Banking & Trust Co.*, 432 Pa. 129, 132, 247 A.2d 587, 589 (1968).[11] This requirement continues in effect notwithstanding the enactment of Rule 1901. We therefore conclude that prejudice is required before a case is dismissed for inactivity.[12, 13]

Accordingly, the three part test applicable to the defendant's motion for non pros in *Jacobs* applies here. To dismiss a case for inactivity there must first be a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude. Second, the plaintiff must have no compelling reason for the delay. Finally, the delay must cause actual prejudice to the defendant. 551 Pa. at 358, 710 A.2d at 1103. We further hold that equitable principles should be considered when dismissing a case for inactivity pursuant to Rule 1901.

**10.** The Opinion in Support of Affirmance, citing *Penn Piping*, presumed prejudice as the delay exceeded two years. In the Opinion in Support of Reversal, I again noted my disagreement with the adoption of the presumption of prejudice and stated that my concerns were magnified in a case arising from the administrative action of the prothonotary acting under a local rule implementing Rule 1901.

**11.** Rule 1901 became effective on May 10, 1973, and was amended on January 18, 1974.

**12.** This rule shall apply to all pending cases where the issue has been preserved.

**13.** We note that Appellants preserved their right to challenge the dismissal of the action by responding to the court order directing them to appear for a hearing on whether the case should be terminated for inactivity. Had they not done so, their right to challenge the dismissal would have been waived and the court could have dismissed the action without any showing of prejudice to Appellees.

Here, the record reveals a period of inactivity from August 31, 1992 to October 25, 1995. Appellants argue that a considerable portion of the delay was attributable to Appellees because they failed to timely produce an x-ray which was critical to the case.[14] We find that the trial court's conclusion that the "missing" x-ray did not affect the outcome of the case is supported by the record.

The law is settled that it is plaintiff, not defendant, who bears the risk of failing to act within a reasonable time to move a case along. *Pennridge Elec. v. Souderton School,* 419 Pa.Super. 201, 209, 615 A.2d 95, 99 (1992). Appellants were given thirty-nine x-rays along with a detailed inventory, which would have revealed that the particular x-ray they sought was not included. Appellants apparently did not immediately examine the x-rays or the inventory because they did not request the particular x-ray until ten months later in September of 1993. Moreover, it is undisputed that during this time Appellants possessed the radiologist's interpretation or written explanation of the "missing" x-ray.

Thus, we conclude that Appellants lacked due diligence in failing to proceed with reasonable promptitude and that no compelling reason existed for the delay. We must next determine whether Appellees were prejudiced by events which occurred during the delay in prosecution, specifically, the death of Dr. Kruper.

At the termination hearing, Appellees contended that Appellant's counsel listed Dr. Kruper as a possible expert witness in their answers to interrogatories and that due to his death, they were precluded from discovering the findings of his examination, his opinion concerning liability, causation and damages and the details of the history provided to him by Daniel Shope. The trial court specifically found that Appellees were prejudiced by the death of Dr. Kruper. We find no

14. It is interesting to note that Appellants rely solely on the missing x-ray to explain the delay in prosecution. Appellants' counsel conceded at the termination hearing that any other delays were "due to inadvertence on [her] part," (N.T. 12/1/1995 at 4), and were "entirely [her] doing." (N.T. 12/1/1995 at 12).

abuse of discretion on the part of the trial court in this regard.[15]

For the reasons set forth herein, the order of the Superior Court is affirmed.

**15.** Appellants argue that Appellees were not prejudiced by the death of Dr. Kruper because he was not the treating physician, was not deposed and was not listed as an expert witness. These same arguments were made before the trial court and rejected. The trial court obviously credited the Appellees' version of the importance of Dr. Kruper as a witness.